No. 11,676.

## JOS. PALMER VS E. C. HIGHTOWER.

The proof not disclosing an intention on the part of the defendants either to defraud their creditors or to give an unfair preference to some of them, the judge of the District Court was authorized to dissolve the attachment.

APPEAL from the Third District Court, Parish of Claiborne. *Barksdale, J.*

---

*John A. Richardson* for Plaintiff and Appellant.

---

*McClendon & Seals* for Defendant and Appellee.

The opinion of the court was delivered by

WATKINS, J.   This is a case of attachment, which was dissolved in the court of first instance, and from the decree dissolving the plaintiff's writ he has appealed, other grounds being set up as incidental to the relief sought by the attachment.

In this court the defendant and appellee filed an answer requesting an increased allowance of damages, so that our judgment would give them twenty-five hundred dollars in lieu of the one hundred and fifty dollars awarded.

The amount sued for is twenty-five hundred dollars, represented by three notes for the amounts of eight hundred and forty-one dollars and sixty-six cents, eight hundred and forty-nine dollars and ninety-nine cents, and eight hundred and fifty eight dollars and thirty-three cents, respectively, an open account of fifty dollars and a claim for rent.   For the last item a writ of provisional seizure issued, about which there is little or no controversy.

Preliminarily the defendants tendered an exception of prematurity, which was directed against the note for eight hundred and forty-nine dollars and ninety-nine cents and the one for eight hundred and fifty-eight dollars and thirty-three cents that went to maturity after the suit was filed; and the attachment having been dissolved this exception was, of course, sustained, the writ of provisional seizure not appertaining to the premature obligations.

The answer of defendants is a general denial, accompanied with a reconventional demand for a debt of one hundred and forty-five dollars and eighty-five cents and twenty-five hundred dollars damages, the amount of the open account being specially pleaded in compensation of plaintiff's demand for rent.

The judgment was in favor of the plaintiff for one hundred and twenty dollars rent, less a credit of fifty-five dollars and fifteen cents, sustaining the writ of provisional seizure; and in the further sum of eight hundred and forty-one dollars and sixty-six cents, non-suiting demand on the two notes not due.

It was in favor of the defendant on his reconventional demand for the sum of one hundred and fifty dollars damages, in addition to the aforesaid credit, and dissolving his attachment with costs.

On the score of the attachment the testimony is brief.

It shows that prior to the first of July, 1893, plaintiff was conducting a livery stable in the town of Homer, in the parish of Clai-

borne, and that the two defendants had a lot of mules which they operated in the building of levees and working on railroads. About that date, plaintiff made a sale of his business to the defendant, inclusive of his stock; and the defendants thereafter continued the business at plaintiff's old stand, renting his stable for the remainder of the year. That on or about the 1st of December of that year defendants purchased the only competing livery business in the town, and operated both stables up to the 1st of January, 1894; and at that date they concentrated all of their stock and vehicles at the stable they had purchased, and the plaintiff resumed business at his own premises, having declined to lease to the defendants for the current year. That shortly prior to the maturity of the first note, one of the defendants called upon the plaintiff to ascertain whether he would want his money—stating that if they (defendants) paid the note "they would have to sell some mules." That plaintiff replied " that he would need some money about the 1st of January, and to go ahead and sell the mules." That after one of the defendants had carried off for sale some of the mules the other "inquired of the plaintiff what amount he would (be compelled) to have and (wanted to know) if he was going to push them;" and that " plaintiff told him he only wanted a few |hundred dollars to pay some accounts around town, and would let them go on with the other." That immediately after this conversation one of the defendants went to Shreveport with a lot of mules and disposed of two, and returning home with the remainder of the lot notified the plaintiff of the result. That on the 10th of January following, one of the defendants started for an adjoining parish with a lot of mules for sale, and plaintiff obtaining a writ of attachment had the lot of mules and other property seized.

With regard to the foregoing statement there is practically no controversy.

But the contention of plaintiff's counsel is that, notwithstanding one of the defendants admitted having realized two hundred and forty dollars from the sale of mules in Shreveport, he declined to pay over the proceeds; and that, when subsequently other mules were sent out of the jurisdiction of the court, he had a right to presume defendant's intention to have been fraudulent and sue out an attachment. On the other hand the defendants, in their answer, specifically aver that " the allegations of the plaintiff's petition, on which

the writ of attachment issued, are false," and the principal averment is that the acts complained of were intended "to defraud their creditors or give an undue preference to some of them."

That the test of the truthfulness of an affidavit for an attachment under Code of Practice, Art. 240, Nos. 4 and 5, is that the act complained of was *per se* fraudulent, or was intended to defraud creditors, or to give an *unfair* preference to some of them.

In confirmation of the truthfulness of his affidavit the plaintiff introduced a witness who stated that about the date of the attachment he held a conversation with one of defendants about plaintiff's claim, in which he said " plaintiff had not come up to his contract, and they were not going to pay him until he did;" and made other similar statements indicative of an intention to avoid the payment thereof. This evidently occurred on the day the attachment was issued, because that witness said: " Something was said about the attachment *being out.* He said he thought plaintiff was not treating him right. That he was trying to beat (them) out of (their) stock," etc. And he subsequently admits, on his cross-examination, that "this conversation took place about 9 o'clock at night, and the stock was attached about 6 o'clock the same evening." Hence this statement could have exercised no possible influence over the attachment issued *previously,* or have served as any justification of a seizure under the writ, in an adjoining parish on the following day.

One of the defendants explains that he did not get the cash for the mules he sold in Shreveport, but an order that was to be paid on his *personal* presentation to the drawee in Shreveport. And not only did that condition make it necessary for him to present that order, but other conditions required his presence there. That the attachment was sued out on the Wednesday following his interview with the plaintiff on Saturday; the following day being Sunday and Monday being a legal holiday, there was no opportunity for him to have *collected* his order, and for that reason he could not have paid to the plaintiff the proceeds of the sale of the mules *prior* to the attachment. He says: "I returned Tuesday night and the attachment was served Wednesday evening about 6 o'clock."

He states that he had no recollection of telling Denman (plaintiff's witness) that he did not intend to pay plaintiff at all, but did tell him that he did not intend paying plaintiff "when some one else held the note," another party having given him notice that he held the note.

He further states that he had no intention of beating the plaintiff out of his claim. Says he: " I could have done so very easily. I made no effort to keep the teams that were out from being attached." He says the object of the trip to Ruston "was to sell mules to pay off the plaintiff," etc.

The testimony of all the witnesses points in one direction and is in strict accord with the statements quoted from the evidence of the defendants, and it wholly fails to make out a case of fraud against them. Indeed, we take it to be clear from the evidence that the defendants made one sale of mules, and attempted to make another, under the belief that plaintiff had expressed his willingness that they might make such sales for the purpose of realizing means to make a partial payment on his first maturing note. And the statement is not controverted that defendants had been notified that their notes were in other hands than that of the plaintiff prior to the time the defendants had collected their old orders for the price of the mules.

It is equally clear that plaintiff, in suing out the attachment, acted in good faith in the supposed exercise of his legal rights, though upon insufficient evidence to maintain same; and, consequently, his attachment was dissolved with only nominal damages.

The cause was tried and decided in the lower court by the judge of the vicinage, who saw and heard the witnesses, and our examination and appreciation of the testimony in the record brings our minds to the same conclusion that he reached.

This is not a case for the allowance of any other than *actual* damages in favor of the defendants for the temporary inconvenience they suffered by the seizure of their property under the writ of attachment.

Judgment affirmed.